El Juez Asociado Señor Rebollo López
emitió la opinión del Tribunal.
Se nos solicita la revisión de una Sentencia emitida por el Tribunal de Apelaciones, Región Judicial de San Juan, mediante la cual se confirmó y modificó una Sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan, en la que se declaró “con lugar” una solicitud de expropiación a favor de la Autoridad de Carre-teras y Transportación. Veamos los hechos acaecidos que originan el presente recurso.
I
El 26 de abril de 1994, la Autoridad de Carreteras y Transportación de Puerto Rico (ACT) presentó ante el Tribunal de Primera Instancia dos peticiones de expropiación forzosa para adquirir 8,554.741 y 120,925.207 metros cua-drados en el Barrio Canas del término municipal de *1053 Ponce.(1) Como justa compensación, la ACT depositó $342,200 y $1,230,700, respectivamente. Se denominaron como partes con interés a la señora Adriana Mercado de Wilson, el señor Richard S., la señora María Luisa, Margarita María, de apellidos Wilson Mercado; David Mario, la señora Eileen María, de apellidos Coffey Mercado, y la se-ñora Eileen Mercado O’hanlon, John Doe, Richard Doe, la señora Eufemia Eileen Mercado, la señora Adriana Luisa Mercado Parra, John Doe y Richard Doe (las partes con interés).
Luego de un largo y accidentado desarrollo procesal, las partes se reunieron el 21 de octubre de 2003 y llegaron a unos acuerdos transaccionales en cuanto al valor de las propiedades en controversia.(2) Estas propiedades se valo-raron en $395,000 (KEF19940133) y $4,252,679 (KEF19940131), respectivamente. Sin embargo, las partes no pudieron acordar la tasa de interés que debería pagar la ACT sobre la suma adicional pactada.
El 21 de octubre de 2003, las partes con interés presen-taron ante el Tribunal de Primera Instancia un escrito ti-tulado Memorando [s]obre la Tasa de Interés Aplicable al Pago de Justa Compensación en Casos de Expropiación Forzosa.(3) En dicho escrito, las partes con interés plantea-ron que la tasa de interés prescrita en la Ley de Expropia-ción Forzosa del Código de Enjuiciamiento Civil de 12 de marzo de 1903,(4) según enmendada (Ley de Expropiación), era inconstitucional de su faz, y en su aplicación, ya que no proveía la justa compensación que requiere la See. 9 del Art. II de la Constitución del Estado Libre Asociado de Puerto Rico, L.P.R.A., Tomo 1. Argumentaron que la legis-lación estatal no tomaba en cuenta las fluctuaciones en el mercado local de los intereses entre el tiempo en que la
*1054 propiedad fue expropiada y la fecha en que se dictaba la sentencia.
El 27 de octubre de 2003 —archivadas en autos el 30 de octubre de 2003— el Tribunal de Primera Instancia dictó sentencias parciales mediante las cuales estableció el valor de las propiedades.(5) En cuanto a una de las propiedades (KEF19940133), el foro de primera instancia decretó que el valor era $395,000. Por ello le ordenó a la ACT depositar $52,800 debido a que ésta ya había consignado $342,200 al iniciar el procedimiento de expropiación. En cuanto a la otra propiedad (KEF19940131), el mismo foro declaró que el valor de la propiedad era $4,252,679. Por tal razón, le ordenó a la ACT que depositara $3,021,979 porque al inicio del procedimiento de expropiación había consignado $1,230,700. Además de las sumas adicionales en los respec-tivos casos, la ACT debería satisfacer los intereses sobre las respectivas sumas a razón de la tasa vigente de uno por ciento anual, según establecida por la Oficina del Comisio-nado de Instituciones Financieras (OCIF), computados desde la presentación de la petición de expropiación hasta el pago total. Se ordenó al Secretario de Justicia y al Co-misionado de Instituciones Financieras (el Comisionado), se expresaran sobre el planteamiento constitucional de las partes con interés.
El 31 de octubre de 2003, la ACT presentó ante el Tribunal de Primera Instancia un escrito titulado Moción So-licitando se Desestime Alegaciones de la Parte con Interés.(6) Alegó, entre otras cosas, que la institución que establece el porciento de intereses a pagarse por sentencia es la Oficina del Comisionado de Instituciones Financieras (OCIF), la cual no era parte en este caso, por lo que las partes con interés tenían que presentar un caso civil independiente.
El 10 de noviembre de 2003 —notificada el 17 de no- *1055 viembre de 2003— el Tribunal de Primera Instancia emitió una Orden e indicaron lo siguiente:
En relación a la Moción Solicitando Se Desestime Alegacio-nes de la Parte Con Interés radicada el día 31 de octubre de 2003, el Tribunal dictó la siguiente orden:
“Replique la parte con interés, en un término a vencer en 10 días”.(7)
El 25 de noviembre de 2003, las partes con interés pre-sentaron ante el Tribunal de Primera Instancia un escrito titulado Moción en Cumplimiento con Orden. (8) Alegaron, entre otras cosas, que hacer el planteamiento sobre los in-tereses en un pleito separado podría constituir un fraccio-namiento y podría interpretarse como una renuncia al mismo.
En cuanto al caso (KEF19940131), el 9 de enero de 2004 la ACT, en cumplimiento con la sentencia parcial de 27 de octubre de 2003 del Tribunal de Primera Instancia, con-signó $3,312,668.55.(9) Esta suma incluía los intereses a razón del uno por ciento computados desde el 26 de abril de 1994, fecha de presentación de la demanda de expropia-ción, hasta la consignación final.
En cuanto al caso (KEF19940133), el 2 de febrero de 2004 la ACT, en cumplimiento con la Sentencia Parcial de 27 de octubre de 2003 del Tribunal de Primera Instancia, consignó $57,385.64.(10) Esta suma incluía los intereses a razón del uno por ciento computados desde el 26 de abril de 1994, fecha de presentación de la demanda de expropia-ción, hasta la consignación final.
El 3 de febrero de 2004, la OCIF, en cumplimiento con la Sentencia de 27 de octubre de 2003 del Tribunal de Pri-mera Instancia, presentó un escrito titulado Memorando de la Oficina del Comisionado de Instituciones Financieras *1056 en Cumplimiento de Orden.(11) Alegó, entre otras cosas, que la tasa de interés aplicable es la prescrita en el Regla-mento 78-1 de la Junta Financiera de la Oficina del Comi-sionado de Instituciones Financieras,(12) (Reglamento 78-1), al momento de dictarse la sentencia. Argüyeron, además, que la Sec. 5A de la Ley de Expropiación 32 L.RR.A. see. 2907, no es inconstitucional de su faz ya que la tasa de interés pagadera a las partes con interés no surge de dicha ley ni de la Regla 44.3 de Procedimiento Civil.(13) Sostuvieron, además, que la See. 5 A de la Ley de Expropiación provee de manera adecuada la justa compen-sación según dispuesta en la See. 9 del Art. II de la Cons-titución de Puerto Rico, supra. Concluyó que la aplicación del Reglamento 78-1 a las partes con interés no resultaba inconstitucional ya que la tasa de interés dispuesta por éste alegadamente incorpora y refleja la realidad econó-mica de Puerto Rico.
En cuanto al caso (KEF19940131), el 5 de febrero de 2004 la ACT consignó una cantidad adicional ($2,526.30) en exceso de intereses no compensados sobre la cantidad de $3,312,668.55.(14)
El 19 de febrero de 2004, las partes con interés presen-taron en el Tribunal de Primera Instancia, un escrito titu-lado Réplica a Memorando de la Oficina del Comisionado de Instituciones Financieras en Cumplimiento de Orden.(15) Alegaron, entre otras cosas, que la Ley de Expro-piación era inconstitucional de su faz, ya que el método provisto por la misma para determinar la tasa de interés aplicable en casos de expropiación forzosa, “es el germen de su propia inconstitucionalidad”. (16) Sostuvieron, ade-más, lo siguiente:
*1057 Por otro lado, la Ley de Expropiación establece que la tasa aplicable es aquella “que esté en vigor al momento de dictarse la sentencia.” Al fijar un solo tipo de interés (el fijado a [la] fecha de la sentencia), el estatuto viola la Constitución si las variaciones en el tipo de interés durante el periodo en cuestión resultan en que el expropiado reciba menos de la justa com-pensación que exige nuestra Constitución. Según quedó clara-mente establecido en el Memorando sobre Tasa de Interés so-metido por la compareciente, esa legislación no toma en cuenta las fluctuaciones en el mercado local de intereses entre el tiempo en que la propiedad fue expropiada y la fecha que se dicta la sentencia. Este defecto en la Ley puede causar, por un lado, que el gobierno pague una tasa de interés mayor a la que le corresponde si los intereses al momento de dictarse la sen-tencia son mayores a los intereses vigentes entre el momento de la expropiación y el momento de la sentencia. El defecto de la ley también puede causar que el gobierno pague una tasa de interés menor a la que le corresponde recibir el afectado, como parte de su justa compensación.
Señalaron que el vicio constitucional de la Ley de Ex-propiación provenía de su propio texto, por lo cual la ley resultaba inconstitucional de su faz.
El 19 de febrero de 2004, notificada el 24 de febrero de 2004, el Tribunal de Primera Instancia emitió una Senten-cia que determinaba que el interés dispuesto en la Ley de Expropiación de uno por ciento era justo y equitativo para ambas partes.(17)
Inconformes, el 25 de marzo de 2004, las partes con in-terés presentaron recursos de apelación en el Tribunal de Apelaciones al señalar que el foro de primera instancia in-cidió al declarar constitucional la tasa de interés prescrita en la Ley de Expropiación.(18) Alegaron, entre otras cosas, que el porciento fijo por semestre establecido por el Regla-mento 78-1 de OCIF, no tomaba en cuenta las fluctuacio-nes en las tasas de interés en los años entre la fecha de la expropiación y la fecha del pago. Esta situación provocaba que el gobierno pagara una tasa de interés menor a la que le correspondía recibir a los peticionarios como parte de su *1058 justa compensación en violación a la cláusula de justa com-pensación de la Constitución del Estado Libre Asociado de Puerto Rico. Argüyeron, además, que la sentencia dictada por el Tribunal de Primera Instancia, en cuanto a la tasa de interés aplicable al pago de una justa compensación, no reflejaba la realidad económica de Puerto Rico.
El 22 de abril de 2004, la ACT presentó ante el Tribunal de Apelaciones un escrito titulado Moción en Auxilio de Jurisdicción.(19) Argumentó que las alegaciones del recurso de las partes con interés son de carácter constitucional y correspondía al Departamento de Justicia y a OCIF expre-sarse al respecto.
El 23 de julio de 2004 el Procurador General presentó su alegato ante el Tribunal de Apelaciones.(20) En esencia, ar-gumentó que la tasa de interés dispuesta en la Ley de Ex-propiación y el Reglamento 78-1 de OCIF era justa y equi-tativa para las partes. Sin embargo, recomendó que se debía devolver el caso al foro de primera instancia para que se hicieran los cómputos correspondientes acorde con las tasas de interés prevalecientes en el mercado, según surgía del Reglamento 78-1 de OCIF, y conforme éstas va-riaron desde la fecha de expropiación hasta la fecha del pago total de la compensación.
El 12 de agosto de 2004 la ACT presentó ante el Tribunal de Apelaciones un escrito titulado Moción Urgente Ex-poniendo la Posición de la Autoridad de Carreteras y Transportación.(21) Alegaron, entre otras cosas, que no es-taban de acuerdo con el método propuesto por el Procura-dor General para el cómputo de los intereses legales por estar en contra de lo establecido en la Ley de Expropiación.
El 24 de agosto de 2004 las partes con interés presenta-ron ante el Tribunal de Apelaciones un escrito titulado Ré-plica a Moción Urgente Exponiendo la Posición de la Auto- *1059 ridad de Carreteras y Transportación.(22) Alegaron, entre otras cosas, que la ACT apoyaba su posición en una inter-pretación restrictiva e inconstitucional de la Ley de Expropiación.
El 13 de septiembre de 2004 la ACT presentó ante el Tribunal de Apelaciones un escrito titulado Oposición a R[é]plica a Moción Urgente Exponiendo la Posición de la Autoridad de Carreteras y Transportación.(23) Alegaron, en síntesis, que el cómputo de los intereses sobre una suma adicional, en caso de expropiaciones, será el tipo de interés anual fijado por la Junta Financiera de la OCIF que esté vigente cuando el Tribunal de Primera Instancia dicte la sentencia, y que dicho interés aplicará a todo el periodo comprendido entre la fecha del taking hasta el pago de la suma adicional.
El 29 de julio de 2005 —notificada el 5 de agosto de 2005— el Tribunal de Apelaciones emitió una Sentencia en la que acogió los argumentos del Procurador General.(24) El foro intermedio apelativo sostuvo la constitucionalidad de la Ley de Expropiación y confirmó la sentencia emitida por el Tribunal de Primera Instancia. Sin embargo, devolvió el caso al foro de primera instancia para que éste hiciera los cómputos correspondientes de acuerdo con las tasas de in-terés prevalecientes en el mercado —según surge del Re-glamento 78-1 de OCIF— y conforme éstas habían variado semestralmente desde la fecha de expropiación hasta la fe-cha del pago total de la justa compensación.
Insatisfecha, la ACT acude ante nos mediante un recurso de Certiorari en el que alega la comisión del error siguiente:
[A.] ERRÓ EL HONORABLE TRIBUNAL DE CIRCUITO DE APELACIONES AL ORDENAR EL CÓMPUTO DE LOS INTERESES LEGALES EN ACORDE CON LAS TASAS DE INTERÉS PREVALECIENTES EN EL MERCADO SEGÚN SURGEN DEL REGLAMENTO 78-1 DE LA OFICINA DEL *1060 COMISIONADO DE INSTITUCIONES FINANCIERAS (OCIF) CONFORME HAN VARIADO SEMESTRALMENTE DESDE LA FECHA DE EXPROPIACIÓN HASTA [LA] FE-CHA DEL PAGO TOTAL DE LA JUSTA COMPENSACIÓN.
EXISTE UN CONFLICTO SUSTANCIAL ENTRE DECI-SIONES PREVIAS DEL TRIBUNAL DE CIRCUITO DE APE-LACIONES CON RELACIÓN AL MÉTODO DISPUESTO POR LA LEY PARA CÓMPUTO DE LOS INTERESES LEGA-LES EN LOS CASOS DE EXPROPIACIÓN FORZOSA.
Con el beneficio de la comparecencia de las partes, esta-mos en posición de resolver los asuntos traídos ante nues-tra consideración. Veamos.
II
 La See. 9 del Art. II de la Constitución del Estado Libre Asociado de Puerto Rico, supra, pág. 308, dispone que “[n]o se tomará o perjudicará la propiedad privada para uso público a no ser mediante el pago de una justa compensación y de acuerdo con la forma provista por ley”.
La obligación del Estado de pagar una justa compensa-ción se puede manifestar de tres maneras: (1) mediante el ejercicio directo del poder de dominio eminente, instando un recurso de expropiación; (2) por medio de su reglamen-tación, y (3) cuando ocurre una incautación de hecho al afectar sustancialmente el uso de la propiedad físicamente.(25) Hemos expresado que la justa compensa-ción “es aquella ‘que ponga al dueño en una posición pecu-niaria tan buena a la que estaría si la propiedad no se hubiese expropiado’ ”. (Enfasis suplido.)(26)
Hemos sostenido, de la misma forma que el Tribunal Supremo de Estados Unidos, que la determinación de una justa compensación es esencialmente un ejercicio judi *1061 cial, no legislativo. (27) En E.L.A. v. Rexco Industries, Inc., 137 D.P.R. 683, 688-689 (1994), citando a Monongahela Navigat’n Co. v. United States, 148 U.S. 312, 327 (1893), y a U.S. v. 50.50 Acres of Land, 931 F.2d 1349 (9no Cir. 1991), sostuvimos lo siguiente:
“[La justa compensación] es una controversia judicial y no legislativa. La legislatura puede determinar qué propiedad privada se necesita para propósitos públicos — ésta es una controversia de carácter político y legislativo; pero cuando se ha ordenado la expropiación, entonces la controversia sobre la compensación es judicial. ... La constitución ha declarado que se tiene que pagar justa compensación y que su determinación es una cuestión que le compete a los tribunales.” (Traducción nuestra.)
La Ley de Expropiación ordena el pago de intereses cuando existe una diferencia entre la suma fijada por la parte que solicita la expropiación y la cantidad que determine el Tribunal como justa compensación.(28) Sobre este particular, la Sec. 5B de la Ley de Expropiación dis-pone lo siguiente:
En cualquier sentencia dictada en un procedimiento de ex-propiación forzosa para la adquisición de propiedad privada o de cualquier derecho sobre la misma para uso público o apro-vechamiento en beneficio de la comunidad, entablado por el Estado Libre Asociado de Puerto Rico o Gobierno Estatal directamente, o a su nombre por cualquier agencia, autoridad, instrumentalidad o funcionario del Estado Libre Asociado de Puerto Rico, en que la cantidad determinada por el tribunal como justa compensación por la propiedad o los derechos en la misma objeto de tal procedimiento, tanto en caso de trasmi-sión del titulo como de la mera posesión sin trasmisión del titulo, sea mayor que la cantidad fijada por el demandante y depositada en el tribunal como justa compensación por tal pro-piedad o derechos en la misma, el Estado Libre Asociado de Puerto Rico pagará el importe de la diferencia entre la suma así fijada por él demandante y depositada por el en el tribunal y la cantidad que a tal efecto haya determinado el tribunal *1062 como justa compensación por dicha propiedad o derechos en las mismas objeto de tal procedimiento, con intereses a razón del tipo de interés anual que fije por Reglamento la Junta Fi-nanciera de la Oficina del Comisionado de Instituciones Fi-nancieras y que esté en vigor al momento de dictarse la senten-cia, de conformidad con la Regla 44.3, Ap. III de este título, sobre tal diferencia a contar desde la fecha de la adquisición de tal propiedad o derechos y desde esta fecha hasta la del pago de dicha diferencia; Disponiéndose, que en los casos en que el demandado o demandados apelen de la sentencia fijando la compensación y el Tribunal Supremo confirmase dicha senten-cia o rebajase la compensación concedida, el apelante no reco-brará intereses por el período de tiempo comprendido entre la fecha de radicación del escrito de apelación y hasta que la sentencia del Tribunal Supremo fuera final, firme y ejecutoria. (Énfasis suplido.)(29)
El pago de intereses es una parte integral de la justa compensación según el mandato constitucional de justa compensación.(30)
La Ley de Expropiación establece que la tasa de interés que fije la Junta Financiera de OCIF es la que se utilizará para calcular intereses en casos de expropiación forzosa.(31) En E.L.A. v. Rexco Industries, Inc., supra, invalidamos la imposición del seis por ciento como tasa de interés anual, según disponía la Ley de Expropiación vigente al momento de dictarse la sentencia. Como resultado de esto, ordena-mos que el Estado debía pagar los intereses que surgían del Reglamento 78-1 de OCIF que fue aprobado el 25 de octubre de 1988. El Reglamento 78-1 de OCIF, pág. 1, dis-pone lo siguiente:
SECCIÓN 3 — FIJACIÓN DE TASAS
a) Sentencias impuestas al Estado Libre Asociado de Puerto Rico, sus municipios, agencias, instrumentalidades, corpora-ciones públicas o funcionarios en su carácter oficial: La tasa equivalente al r[é]dito de los “U.S. Treasury Bills” con venci-miento a seis (6) meses redondeado al V2 punto más cercano. (Énfasis suplido.)
*1063 III
Con el trasfondo normativo antes expuesto, pasamos a resolver si erró el Tribunal de Apelaciones al modificar y de esa forma confirmar la sentencia emitida por el Tribunal de Primera Instancia. En su sentencia, el foro intermedio apelativo dispuso que el solo utilizar la tasa de interés vi-gente al momento de dictar la sentencia no proveía una justa compensación conforme a la Constitución, ya que esta tasa no reflejaba los cambios acaecidos en el mercado entre la fecha de expropiación y la fecha del pago total por los terrenos expropiados. Le asiste la razón. Veamos.
Recientemente, este Tribunal tuvo la oportunidad de resolver la controversia que aquí nos ocupa. En Aut. Carreteras v. 8,554.741 m/c I, 172 D.P.R. 278 (2007), atendimos la controversia de cómo se deben computar las tasas de intereses en casos de expropiaciones forzosas. Sostuvimos que en los casos donde el periodo entre la incautación y el pago total del Estado exceda un semestre,(32) el Tribunal de Primera Instancia debe considerar las variaciones en las tasas de interés durante los distintos semestres. Ex-presamos, además, lo siguiente:
De esta forma se asegura que las tasas de interés que se apli-quen en un momento dado reflejen las condiciones existentes en ese momento en el mercado para los instrumentos financieros. Al ser el seleccionado por OCIF un instrumento financiero con un término de seis meses, corresponde que las tasas aplicables se revisen semestralmente, tal como se esti-pula en el Reglamento 78-1 de OCIF.
En E.L.A. v. Rexco Industries, Inc., supra, dispusimos que las fluctuaciones en el mercado tienen que ser consideradas al computar el interés aplicable en casos de expropiación forzosa. Sin embargo, se le estaba dando una lectura literal a la Ley de Expropiación cuando disponía que se utilizara el interés fijado por OCIF que estuviera en vigor al momento de dictarse la sentencia. La intención de este Tribunal en E.L.A. v. Rexco Industries, Inc., supra, fue que las tasas de intereses aplica- *1064 bles a casos de expropiación forzosa reflejaran las fluctuacio-nes imperantes en el mercado de valores. Para lograr dicho objetivo, se tienen que considerar las variaciones en las tasas de interés durante los distintos semestres. De esta forma se cumple con el mandato constitucional de satisfacer una justa compensación en los casos de expropiación forzosa, consagrado en el Art. II, Sec. 9 de nuestra Constitución, supra. Así pues, entendemos que la determinación del Tribunal de Apelaciones a estos efectos debe ser confirmada ya que cumple con el pro-pósito establecido por este Tribunal en E.L.A. v. Rexco Industries, Inc., supra. (Enfasis suprimido.) Aut. Carreteras v. 8,554.741 m/c I, supra, pág. 300.
En el presente caso, la incautación (taking) de las pro-piedades de las partes con interés ocurrió en 1994; sin embargo, no fue hasta el 2003 que el foro de primera instancia emitió una sentencia que estableció el valor final de las propiedades. Durante esos nueve años las tasas de interés fijadas por la OCIF variaron semestralmente. Estas varia-ciones representan las fluctuaciones del mercado durante el período de tiempo pertinente. Siendo los intereses de los casos de expropiación forzosa parte de la justa compensa-ción, procede que el Tribunal de Primera Instancia consi-dere las variaciones en las tasas de interés durante los distintos semestres. De esta forma se llega a una solución justa y razonable que cumple con el principio constitucio-nal de justa compensación.
Debido al hecho que Aut. Carreteras v. 8,554.741 m/c I, supra, versa sobre la misma exacta controversia que nos ocupa, procede aplicar al caso de marras la norma esbo-zada en dicho caso.
Así las cosas, resolvemos que en los casos de expropia-ciones forzosas donde el período entre la incautación y el pago total del Estado excede un semestre, el Tribunal de Primera Instancia tiene que considerar las variaciones en las tasas de interés durante los distintos semestres, según surgen del Reglamento 78-1 de OCIF. El Tribunal debe to-mar la diferencia entre la incautación inicial y el valor final y añadirle la cantidad que resulte de aplicarle a dicho valor la tasa de interés anual prevaleciente en el corres- *1065 pónchente semestre, según se establece en el documento que emite OCIF (Reglamento 78-1), por los correspondien-tes meses hasta el final del semestre. Al valor que resulte se le aplica la tasa de interés anual prevaleciente en el siguiente semestre, según se establece en el documento que emite OCIF (Reglamento 78-1), por los correspondien-tes meses del semestre. Este procesó se repite hasta la con-signación final del valor de la propiedad expropiada que así resulte.
En su escrito de “Apelación”, ACT argumenta que se debe dar una lectura literal a la Sec. 5B de la Ley de Expropiación, supra, según la cual aplicaría la tasa de interés prevaleciente al momento de dictarse la sentencia en el documento que emite OCIF, la cual aquí correspondería a una tasa de uno por ciento. Sin embargo, no podemos olvidar que los tribunales tienen el deber de armonizar todas las disposiciones de ley involucradas en un caso con miras a lograr un resultado sensato, lógico y razonable que represente la intención del legislador. (33) De igual forma, es norma reiterada que antes de decretar la inconstitucionalidad de una ley, el tribunal examinará primero si existe alguna, interpretación razonable del estatuto que le permita soslayar la cuestión constitucional.(34)
Este Tribunal debe rechazar una lectura literal de la Sec. 5B de la Ley Expropiación, supra, según la cual apli-caría la tasa de interés prevaleciente al momento de dic-tarse la sentencia en el documento que emite la OCIF, que aquí correspondería a una tasa de uno por ciento.
La interpretación que estamos haciendo de la See. 5B de la Ley de Expropiación, supra, armoniza su propósito expreso con lo que resolvimos en E.L.A. v. Rexco Industries, Inc., supra, cuando indicamos que las fluctuaciones en el mercado tienen que ser consideradas al computar el *1066 interés aplicable en casos de expropiación forzosa. Tal y como indicamos en Aut. Carreteras v. 8,554.741 m/c I, supra, la intención de este Tribunal en E.L.A. v. Rexco Industries, Inc., supra, fue que las tasas de intereses aplicables a casos de expropiación forzosa reflejaran las fluctuaciones imperantes en el mercado de valores. Para lograr dicho objetivo se tienen que computar progresivamente sobre la base de distintas tasas de interés aplicables a los semes-tres del período entre la incautación y el pago final, según determinadas por la OCIF como las tasas aplicables a las sentencias que el Estado tiene que satisfacer para cada semestre. De esta forma se cumple con el mandato consti-tucional de satisfacer una justa compensación en los casos de expropiación forzosa, consagrado en el Art. II, Sec. 9 de nuestra Constitución, supra.
En mérito de lo anterior, concluimos que el Tribunal de Apelaciones actuó correctamente al devolver el caso al Tribunal de Primera Instancia para que éste hiciera los cóm-putos correspondientes en conformidad con las tasas de in-terés prevalecientes en el mercado según surgen del Reglamento 78-1 de OCIF y conforme éstas han variado semestralmente desde la fecha de la expropiación inicial hasta la fecha del pago total de la justa compensación en ambos casos.
IV
Por los fundamentos antes expuestos, confirmamos la sentencia recurrida.

 Apéndice del recurso de Certiorari, págs. 160-166 y 475-482.

 Íd., págs. 306-309 y 605-608.

 Íd., págs. 310-393 y 610-692.

 32 L.P.R.A. see. 2901 et seq.

 Apéndice del recurso de Certiorari, págs. 394-397 y 695-698.

 Íd., págs. 398-399 y 693-694.

 Íd., págs. 402-403 y 699-700.

 Íd., págs. 404-406 y 703-705.

 Íd., pág. 709.

 Íd., pág. 410.

 Íd., págs. 411-422 y 712-723.

 Reglamento aprobado el 25 de octubre de 1988.

 32 L.P.R.A. Ap. III.

 Apéndice de recurso de Certiorari, pág. 724.

 Íd., págs. 423-432 y 725-734.

 Íd.

 Íd., págs. 433-436 y 735-738.

 Íd., págs. 122-436 y 437-738.

 Íd., págs. 115-116.

 Íd., págs. 72-111.

 Íd., págs. 66-69.

 Íd., págs. 57-59.

 Íd., págs. 47-56.

 Íd., págs. 14-46.

 Velázquez Velázquez v. E.L.A., 135 D.P.R. 84, 88 (1994); Culebra Enterprises Corp. v. E.L.A., 127 D.P.R. 943 (1991); Sucn. García v. Aut. de Carreteras, 114 D.P.R. 676 (1983); Olivero v. Autoridad de Carreteras, 107 D.P.R. 301 (1978).

 E.L.A. v. Rexco Industries, Inc., 137 D.P.R. 683, 689 (1994).

 Íd.; Monongahela Navigat’n Co. v. United States, 148 U.S. 312, 327 (1893); U.S. v. 50.50 Acres of Land, 931 F.2d 1349 (9no Cir. 1991).

 Aut. Carreteras v. 8,554.741 m/c I, 172 D.P.R. 278 (2007).

 32 L.P.R.A. sec. 2908.

 E.L.A. v. Reseco Industries, Inc., supra.

 32 L.P.R.A. sec. 2908.

 Espacio de seis meses naturales.

 Pérez v. Mun. de Lares, 155 D.P.R. 697 (2001).

 E.L.A. v. Aguayo, 80 D.P.R. 552, 596 (1958).