CC-97-321                                                          1

En el Tribunal Supremo de Puerto Rico

| | |
|---|---|
| ANER INVESTMENT CORP.<br>    Peticionaria<br><br>    V.<br><br>JUNTA DE PLANIFICACION<br><br>    Recurrida | Certiorari<br><br>99TSPR65 |

Número del Caso: CC-97-321

Abogados de la Parte Peticionaria: Lic. Rafael A. Cintrón Perales
Lic. Héctor Rivera Rivera

Abogados de la Parte Recurrida: Lic. Teresa M. Pérez Stuart
Lic. Gloria M. Soto Burgos

Abogados de la Parte Interventora:

Agencia Administrativa: Junta de Planificación

Tribunal de circuito de Apelaciones: I, San Juan

Juez Ponente: Hon. González Román

Panel Integrado por:  Pres. Jueza Ramos Buonomo y los Jueces González
Román Y Córdova Arone

Fecha: 4/29/1999

Materia:


Este documento constituye un documento oficial del Tribunal
Supremo que está sujeto a los cambios y correciones del
proceso de compilación y publicación oficial de las
decisiones del Tribunal. Su distribución electrónica se hace
como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Aner Investment Corp.

    Peticionaria

        v.                        CC-97-321

Junta de Planificación

    Recurrida


Opinión del Tribunal emitida por la Juez Asociada señora Naveira de Rodón.


En San Juan, Puerto Rico, a 29 de abril de 1999

La Administración de Terrenos de Puerto Rico (en adelante Administración) presentó ante la Junta de Planificación (en adelante Junta) recurrida, una consulta para la ubicación de un proyecto de urbanización residencial de interés social.  Dicho proyecto se desarrollaría en una finca con cabida de 82.63 cuerdas localizada en el Barrio Espinosa de Vega Alta.  La Junta aprobó la consulta el 8 de diciembre de 1976.

El 17 de julio de 1977, la Administración presentó el desarrollo preliminar de dicho proyecto ante la Administración de Reglamentos y Permisos

(en adelante ARPE). El 18 de noviembre de 1977, ARPE aprobó el desarrollo preliminar, no obstante, estableció un requerimiento de reserva para una futura avenida. En particular, reservó una franja de terreno de aproximadamente 1.32 cuerdas, propiedad de Aner Investment Corporation (en adelante Aner), peticionaria.

El referido predio de terreno ha permanecido reservado desde esa fecha. No obstante, el 16 de febrero de 1995 el Lcdo. Erasmo Don Zabala, Presidente de Aner, le solicitó al Municipio de Vega Alta, a través de su Alcalde, la adquisición o la liberación del inmueble. El 1ro de marzo reiteró su solicitud mediante carta certificada con acuse de recibo. Posteriormente, el 10 de julio de 1995, el licenciado Don Zabala le solicitó a la presidenta de la Junta, al Secretario de Transportación y Obras Públicas y nuevamente al Alcalde de Vega Alta, la adquisición del predio de terreno al amparo de la Ley de Expropiación Forzosa, Ley Núm. 46 de 26 junio de 1987, 32 L.P.R.A. secs. 2923 y ss.

El 8 de noviembre de 1995, la Junta emitió una resolución mediante la cual denegó la solicitud de Aner. Indicó que no procedía la liberación del predio de terreno porque, de acuerdo con las definiciones de la Ley Núm. 46, supra, sobre éste había recaído una **reserva** para vía pública y no una **afectación**.[1] Denegada la reconsideración, Aner acudió, mediante recurso de revisión, al Tribunal

---

[1] La Ley Núm. 46, supra, 32 L.P.R.A. sec. 2924 define los términos **afectación** y **reserva** de la siguiente forma:

"Afectación" significa **la denegación de todo uso productivo en una propiedad** debido exclusivamente a que por la misma se ha propuesto trazar una vía de transportación pública conforme a un plan de transportación o plan vial adoptado por la Junta de Planificación, o porque los terrenos han sido destinados para uso público en un mapa de zonificación o plan de uso de terreno, o porque la Junta de Planificación ha aprobado el desarrollo de un proyecto público sobre dichos terrenos o propiedad.

"Reserva" significa la determinación o actuación de un organismo gubernamental competente mediante la cual separe terrenos privados para fines públicos. (Enfasis nuestro.)

de Circuito de Apelaciones, Circuito Regional de San Juan (en adelante Tribunal de Circuito), quien confirmó la resolución de la Junta.[2]

Inconforme, Aner recurre ante nos con los siguientes señalamientos de error:

> Erró el Honorable Tribunal de Circuito de Apelaciones al determinar que es de aplicación al caso de autos la Ley Núm. 46 del 26 de junio de 1987.

> Erró el Honorable Tribunal de Circuito de Apelaciones al determinar que en el caso de autos presenta una situación donde se reclama tardíamente un derecho adquirido durante la vigencia de la Ley Núm. 2 del 29 de enero de 1979.

> Erró el Honorable Tribunal de Circuito de Apelaciones al aplicar motu proprio la defensa de prescripción extintiva en el caso de autos.

Por estar íntimamente relacionados discutiremos conjuntamente los señalamientos de error uno y dos. Para disponer de éstos es preciso determinar cuál es la ley que debe aplicarse a los hechos que hoy nos ocupan.

I

Sabido es que el derecho al disfrute de la propiedad, aunque fundamental y de génesis constitucional, no es absoluto. La Asamblea Legislativa puede limitarlo en aras del bienestar general ya que "[e]l Estado tiene un poder inherente para realizar actos que promuevan la salud, seguridad y el bienestar de la comunidad mediante reglamentación razonable que limite el uso de una propiedad". Arenas Procesadas, Inc. v. E.L.A., 132 D.P.R. 593; Velázquez v. E.L.A., Op. de 1 de febrero de 1994, 135 D.P.R. ___ (1994), 94 J.T.S. 9, pág. 11483; Culebra Enterprises Corp. v. E.L.A., 127 D.P.R. 931 (1991). Como ejemplo de lo anterior, tenemos la facultad del Estado para expropiar propiedad privada para fines públicos ya sea instando una acción de expropiación, imponiendo restricciones mediante reglamento o incautándose físicamente de una propiedad. Ahora bien, dicha facultad está limitada por la

---

[2] Aner le imputó a la Junta de Planificación haber incurrido en el siguiente error:

> Erró la Junta de Planificación al declarar [s]in lugar la solicitud de la parte recurrente [Aner] al fundamentar su

exigencia de que el inmueble expropiado sea para un fin público y conlleva la obligación de pagar una justa compensación. Véase, Art. II, Sec. 9 de la Constitución del Estado Libre Asociado de Puerto Rico; Hampton Development Corp. v. E.L.A., Op. de 18 de enero de 1996, 139 D.P.R. ___ (1996), 96 J.T.S. 4, pág. 553; Velázquez v. E.L.A., supra, pág. 11483; Culebra Enterprises Corp. v. E.L.A., supra, pág. 952.

De otra parte, se ha instituido la acción de expropiación forzosa a la inversa para aquellos casos excepcionales de ocupación física, incautación de un derecho real, o restricciones a la propiedad mediante reglamento, sin que el Estado haya presentado previamente la acción de expropiación ni consignado una justa compensación. El pleito de expropiación a la inversa se insta por el titular contra el Estado para obtener la compensación a que tiene derecho. Culebra Enterprises v. E.L.A., Op. de 31 de octubre de 1997, 143 D.P.R. ___ (1997), 97 J.T.S. 128 y casos allí citados; Hampton Development Corp. v. E.L.A., supra.

Hemos resuelto, además, que un titular puede reclamarle al Estado los daños y perjuicios procedentes de la incautación física o reglamentaria de su propiedad. En Culebra Enterprises v. E.L.A., supra, pág. 949, se presentó una demanda denominada "expropiación forzosa a la inversa". No obstante, los demandantes sólo reclamaron resarcimiento por los daños y perjuicios sufridos como resultado de las clasificaciones de zonificación impuestas sobre sus terrenos por la Junta de Planificación. Resolvimos que el término prescriptivo para presentar una acción de daños y perjuicios contra el Estado, consecuencia de restricciones a la propiedad mediante reglamento, es un (1) año. Éste comienza a decursar desde que se libera la propiedad de las restricciones o, como máximo, después del octavo año de reserva.

En Velázquez v. E.L.A., supra, el Estado demolió la vivienda en la cual residía el demandante porque estaba localizada en la periferia

---

decisión en la Ley Núm. 46 del 26 de junio de 1987 y al aplicar la misma de manera retroactiva.

de un área en la que había ocurrido un deslizamiento de terreno.[3] Cuatro (4) años después, el demandante reclamó indemnización por la pérdida de la vivienda destruida, es decir, por los daños sufridos. Resolvimos que se trataba de una acción de expropiación forzosa a la inversa en su modalidad de incautación física de la propiedad, a la que también le aplicaba el término prescriptivo de un (1) año establecido en Culebra Enterprises v. E.L.A., supra.

Es menester aclarar, no obstante, que los pronunciamientos anteriormente esbozados sólo aplican a aquellas reclamaciones en las que un titular solicita como único remedio el resarcimiento por los daños y perjuicios procedentes de la incautación física o reglamentaria de su propiedad. No debe interpretarse que hemos establecido el plazo de un (1) año como el término prescriptivo para instar una acción de expropiación forzosa a la inversa o como el plazo máximo para solicitar a la agencia con jurisdicción que libere una propiedad de todo gravamen.

## II

No obstante su poder inherente para limitar el uso de propiedad privada, el Estado no puede privar a un titular del libre disfrute de su derecho propietario por un periodo de tiempo irrazonable. Por esa razón la Asamblea Legislativa aprobó la Ley Núm. 2 de 29 de enero de 1979 y estableció un periodo máximo razonable de tiempo, de ocho (8) años, durante el cual el Estado puede reservar propiedad inmueble privada para la consecución de un fin público.[4] Hampton Development Corp. v. E.L.A., supra, pág. 561. Mediante el referido estatuto la Asamblea Legislativa pretendió:

> adoptar una regla uniforme, consistente e indiscriminatoria, mediante la cual se salvaguarde el derecho constitucional al libre disfrute de la propiedad y se garantice un balance adecuado a las partes en lo que respecta a los intereses de

---

[3] El deslizamiento ocurrió en el área conocida como Mameyes, en Ponce.
[4] El Art. 1 de la Ley Núm. 2, supra, disponía lo siguiente:
> Se fija un término máximo de ocho (8) años para el período durante el cual el Estado Libre Asociado de Puerto Rico puede reservar o congelar propiedad inmueble privada para fines públicos.

cada cual.  Véase la Exposición de Motivos de la Ley Núm. 2, supra.

Sobre este particular hemos expresado que, mediante el establecimiento de una regla uniforme, el Estado cuenta con tiempo suficiente para decidir el destino o uso que le dará a la propiedad reservada, "sin limitar *ad perpetuam* e irrazonablemente los derechos del dueño afectado". Culebra Enterprises v. E.L.A., supra, pág. 955.

La Ley Núm. 2, supra, fue derogada por la Ley Núm. 46 de 26 de junio de 1987, supra.  Esta última, sin embargo, mantuvo el término de ocho (8) años establecido por su antecesora como término máximo para la afectación de propiedad privada.[5]  Los estatutos, no obstante, difieren en cuanto al momento en el que comienza a decursar dicho plazo.  Al amparo de la Ley Núm. 2 se computaba a partir de la declaración de reserva para uso público.  Art. 2, Ley Núm. 2, supra.  A tenor con la Ley Núm. 46, el plazo comienza a contar a partir de la fecha en que se deniega todo uso productivo de la propiedad.  Ley Núm. 46, supra, 32 L.P.R.A. sec. 2926.  De otra parte, la Ley Núm. 2, supra, disponía expresamente que en los casos de propiedades reservadas para uso público con anterioridad a su vigencia, el término de ocho (8) años comenzaría a decursar a partir de la aprobación de la misma, es decir, a partir del 29 de enero de 1979.[6]  Por el contrario, la Ley Núm. 46, supra, nada dispuso en relación con aquellos terrenos reservados antes

---

[5] Véase la definición de afectación en la nota al calce Núm. 1.

[6] El Art. 3 de la Ley Núm. 2, supra, disponía lo siguiente:
    Esta ley comenzará a regir inmediatamente después de su aprobación y en aquellos casos de propiedades reservadas o congeladas **con anterioridad a su vigencia el periodo de ocho (8) años comenzará a contar de la vigencia en la misma.** (Enfasis nuestro.)
    Por su parte, el Art. 4 de la Ley Núm. 46, supra, 32 L.P.R.A. sec. 2926, dispone lo siguiente:

    Se establece un término de ocho (8) años contados a partir de la fecha de **afectación**, como el período durante el cual cualesquiera terrenos de propiedad privada pueden estar afectados como consecuencia de estar reservados para fines o uso público.

de su aprobación, es decir, durante la vigencia de la Ley Núm. 2, supra.

Tanto la Ley Núm. 2, supra, como la Ley Núm. 46, disponen que transcurrido el periodo de ocho (8) años, el dueño del predio reservado puede requerirle a la agencia con jurisdicción que proceda a adquirirlo dentro de los noventa (90) días siguientes a la fecha de la solicitud. Si la agencia no lo compra, el dueño puede requerirle que lo releve de todo gravamen.   Ahora bien, si posteriormente el Estado necesita adquirir los terrenos liberados, tiene que proceder mediante negociación o expropiación.   Art. 2, Ley Núm. 2, supra; Ley Núm. 46, supra, 32 L.P.R.A. sec. 2927.[7]

Tras examinar las disposiciones de ambos estatutos, en armonía con sus respectivas exposiciones de motivos, <u>se puede colegir que están dirigidos al Estado, a regular y delimitar su poder para restringir propiedad privada en aras del bienestar general</u>. Estas legislaciones establecen una presunción *a priori* de que la reserva (de acuerdo con la Ley Núm. 2, supra) o la afectación (a tenor con la Ley Núm. 46, supra)

---

Este término comenzará a contar desde la fecha en que se **deniegue todo uso productivo de unos terrenos**. (Enfasis nuestro.)

[7] El Art. 2 de la Ley Núm. 2 disponía, en lo pertinente, lo siguiente:
   Transcurrido el término fijado por el Estado o el máximo dispuesto en esta ley el dueño de dicha propiedad podrá solicitar a la agencia con jurisdicción que proceda a adquirir la propiedad dentro de un término de 90 días.   Si transcurrido ese término la agencia concernida no ha adquirido la propiedad, el dueño podrá requerir de la Junta de Planificación de Puerto Rico que elimine tales restricciones, **lo cual la Junta de Planificación realizará de inmediato**. (Enfasis nuestro.)

Por su parte, el Art. 5 de la Ley Núm. 46, supra, 32 L.P.R.A. sec. 2927, dispone, en lo pertinente, lo siguiente:

Transcurrido el término establecido en el Art. 4 de esta ley, el dueño de la propiedad afectada podrá solicitar por escrito mediante correo certificado de la agencia a cargo de la construcción de la obra pública que dio lugar a la reserva y a la afectación de los terrenos, que adquiera la propiedad dentro de noventa (90) días siguientes, contados a partir de la fecha del recibo de la solicitud.   Si transcurrido dicho término la agencia no ha adquirido la propiedad, el dueño podrá requerir a la agencia cuya acción afectó los terrenos

de una propiedad privada por un periodo mayor de ocho (8) años **es irrazonable.** Resulta ilustrativo de lo anterior el que durante los debates que precedieron la aprobación de la Ley Núm. 2, supra, se expresó lo siguiente:

> SR. RAMOS BARROSO: Sí, señor Presidente. El único efecto de este proyecto **es que el Estado no puede reservar o congelar propiedades por un término mayor de ocho años.** P. Del S. Núm. 419, Debate del Senado, 27 de marzo de 1978, pág. 11. (Enfasis nuestro.)

Una vez transcurre el término de ocho (8) años, se activa la presunción de irrazonabilidad de la reserva (a tenor con la Ley Núm. 2, supra) o de la afectación (cuando es de aplicación la Ley Núm. 46, supra). Por lo tanto, expirado dicho plazo el titular puede requerir, en cualquier momento, a la agencia con jurisdicción que inste la acción de expropiación o que libere su predio de todo gravamen y ésta viene obligada a cumplir con la ley y ejercer una de las dos opciones.

Es preciso señalar que, la ausencia de una disposición legal que establezca un término máximo para que el titular de un inmueble gravado solicite al Estado la adquisición o liberación de éste, no obedece a un olvido legislativo, sino que es la consecuencia lógica del carácter fundamental del derecho al libre disfrute de la propiedad. El derecho propietario del titular no se extingue como resultado de la restricción impuesta por el Estado, simplemente se limita por un plazo razonable fijado de antemano. Una vez expira el referido plazo, el titular puede solicitar los remedios apropiados y así consolidar su derecho de propiedad.

### III

Teniendo en cuenta los pronunciamientos anteriormente esbozados, pasaremos a disponer de las controversias ante nuestra consideración. El Tribunal de Circuito razonó que el derecho de Aner a reclamar al amparo de la Ley Núm. 2, supra, se había extinguido, pues cuando éste solicitó la adquisición del terreno o el relevo de gravamen a la Junta,

_____

que libere los mismos de cualquier prohibición impuesta en

(en 1995) ya habían transcurrido ocho (8) años desde la derogación del referido estatuto.  En consecuencia, su solicitud estaba gobernada por las disposiciones de la Ley Núm. 46, supra, vigente en ese momento.

Al aplicar la Ley Núm. 46, supra, a los hechos del caso ante nos, el foro apelativo concluyó que no hubo una "afectación" del predio en controversia porque de los autos no surgía que Aner hubiese solicitado autorización para utilizarlo y que ésta haya sido denegada.  Es decir, que no se le denegó todo uso productivo del inmueble.  Bajo esta teoría, en el momento en que Aner hizo su solicitud, aún no había comenzado a decursar el plazo de ocho (8) años y la Junta no venía obligada ni a adquirir el predio ni a liberarlo del gravamen.[8]  No le asiste la razón.  Veamos.

Constituye un principio de hermenéutica que las leyes no tendrán efecto retroactivo a menos que el legislador disponga lo contrario.  En la letra de la ley o en el historial legislativo debe constar la intención de darle efecto retroactivo a un estatuto.  Véase, Art. 3 del Código Civil, 31 L.P.R.A. sec. 3; Franceschini v. Ujaque, 126 D.P.R. 540 (1990); Díaz v. Srio. de Hacienda, 114 D.P.R. 865 (1983).  Hemos resuelto, además, que procede la aplicación retroactiva de una ley, aun cuando no se haya dispuesto expresamente, cuando dicha interpretación resulta la más razonable de acuerdo con el propósito legislativo. J.R.T. v. A.E.E., Op. de 1 de abril de 1993, 133 D.P.R. ___ (1993), 93 J.T.S. 49.

De un examen tanto de la letra de la Ley Núm. 46, supra, como del historial legislativo y de su exposición de motivos, no surge que fuese la intención del legislador otorgarle efecto retroactivo a sus disposiciones.  La Asamblea Legislativa aprobó el referido estatuto sin disponer específicamente qué ocurriría con aquellas propiedades reservadas para fines públicos antes de su vigencia.  Resulta forzoso concluir, por lo tanto, que tenía la intención de que éste aplicara

---

virtud de la afectación.
[8] Véase la nota al calce Núm. 6.

prospectivamente. Si el legislador hubiese querido que la Ley Núm. 46, supra, aplicara retroactivamente, hubiera incluido una expresión al efecto, tal como lo hizo al aprobar la Ley Núm. 2, supra.

ARPE reservó la franja de terreno en controversia **el 16 de noviembre de 1977.** Posteriormente, el 29 de enero de 1979, se aprobó la Ley Núm. 2, supra. A tenor con sus disposiciones, el término de ocho (8) años que tenía el Estado para mantener la propiedad reservada comenzó a decursar a partir de la fecha de su aprobación. El referido periodo expiró el 29 de enero de 1987, es decir, **durante la vigencia de la Ley Núm. 2, supra, y cinco meses antes de que entrara en vigor la Ley Núm. 46, supra.** Según ya señaláramos, esta última es de aplicación prospectiva. Por lo tanto, resulta forzoso concluir que la legislación aplicable al caso ante nos es la Ley Núm. 2, supra.

El 29 de enero de 1987, fecha en que expiró el plazo dispuesto por la Ley Núm. 2, supra, se activó la presunción de irrazonabilidad de la reserva hecha por el Estado. A partir de esa fecha Aner podía requerir a la Junta de Planificación, en cualquier momento, que instara la acción de expropiación o que la relevara del gravamen y ésta venía obligada legalmente a optar por una de esas alternativas.

Resolver lo contrario tendría como consecuencia que un titular se vea privado del libre disfrute de su propiedad por un periodo de tiempo irrazonable y en ocasiones *ad perpetuam,* resultado incompatible con los propósitos expresados por nuestro legislador al aprobar la Ley Núm. 2, supra. Es menester recalcar que en el momento en que Aner solicitó a la Junta la adquisición del terreno o el relevo de la restricción, ya habían transcurrido dieciséis (16) años desde que se efectuó la reserva, esto es, ocho (8) años en exceso al plazo máximo razonable dispuesto por la Ley Núm. 2, supra. De otra parte, de los autos surge que el Municipio de Vega Alta ya no puede llevar a cabo el proyecto

para el cual reservó el predio y que no tiene ningún otro uso que darle a éste.[9]

Por los fundamentos antes expuestos, se dictará sentencia revocatoria del dictamen del Tribunal de Circuito de Apelaciones, Circuito Regional de San Juan y se devuelve el caso a la Junta de Planificación para que resuelva a tenor con lo aquí dispuesto.[10]

Miriam Naveira de Rodón
Juez Asociada

---

[9] Esto surge de una carta que el Alcalde de Vega Alta le envió al licenciado Don Zabala en noviembre de 1995.

[10] Dada la conclusión a la que llegamos es innecesario discutir si el foro apelativo podía aplicar, *motu proprio*, la defensa de prescripción extintiva.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Aner Investment Corp.

  Peticionaria

    v.

           CC-97-321

Junta de Planificación

  Recurrida


SENTENCIA


San Juan, Puerto Rico, a 29 de abril de 1999


Por los fundamentos antes expuestos, se revoca la sentencia dictada por el Tribunal de Circuito de Apelaciones, Región Judicial de San Juan y se devuelve el caso a la Junta de Planificación para que continúe con los procedimientos a tenor con lo aquí dispuesto.

Lo pronunció, manda el Tribunal y certifica la Secretaria de Tribunal Supremo.  El Juez Asociado señor Rebollo López no interviene.


         Isabel Llompart Zeno
         Secretaria del Tribunal Supremo